UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SONJI BLACK BEAR,<br><br>Plaintiff,<br><br>vs.<br><br>STACY WICKRE; JENNIFER ODEGARD; SD DEPARTMENT OF SOCIAL SERVICES; and SHAWNDAI STANDING CLOUD,<br><br>Defendants. | 5:24-CV-05065-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL, AND 1915 SCREENING |

Plaintiff Sonji Black Bear filed a pro se lawsuit under 42 U.S.C. §§ 1983 and 1985 as well as under the Indian Child Welfare Act (ICWA). Doc. 1 at 1. She moves for leave to proceed in forma pauperis, Doc. 4, and filed a motion to appoint counsel, Doc. 5.

I.    **Motion for Leave to Proceed in Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under section 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). Black Bear's financial affidavit shows that she has insufficient funds to pay the filing fee. Thus, Black Bear's motion for

leave to proceed in forma pauperis, Doc. 4, is granted. This Court now screens Black Bear's complaint under 28 U.S.C. § 1915.

## II.    1915 Screening

### A.    Factual Allegations of Black Bear's Complaint[1]

Black Bear alleges that Defendants violated her right to custody of her grandchildren L.J.H.H., L.A.H.H., and G.R.L. Doc. 1 at 1. Black Bear's status as Indian Custodian of the children was terminated in an abuse and neglect action in the Seventh Judicial Circuit of the State of South Dakota (case A22-260), involving the care and custody of G.R.L., L.J.H.H., L.A.H.H., and four other children.[2] Id. at 1, 3; Doc. 1-1 at 11; Doc. 8 at 1, 3, 6. Case A22-260 appears to have coincided with a second abuse and neglect action, bearing case number A22-357, involving custody of Em.A.H.H., Ev.A.H.H., and A.U.H.H. Doc. 10 at 1; see Black Bear v. Lingren, 5:23-CV-05049-RAL, 2024 WL 1299079, at *1 (D.S.D. Mar. 27, 2024) (screening Black Bear's federal complaint surrounding case A22-357).

Both cases stem from events beginning in June 2022 when Pennington County deputy sheriffs executed a full faith and credit order to remove Em.A.H.H., Ev.A.H.H., and A.U.H.H. from the custody of Tiara LeClaire and to place the children with Black Bear. Doc. 8 at 13. The children reported to the deputy sheriffs that Black Bear had abused them. Id. Em.A.H.H. reported that Black Bear mocked and punched them, and A.U.H.H. reported that Black Bear hit her with a spoon on her arms and legs. Id. Em.A.H.H., Ev.A.H.H., and A.U.H.H. reported that they were uncomfortable with some of the men who Black Bear has around her home. Id. DSS then took

---

[1] In this screening order, the facts are taken from Black Bear's Complaint. This Court makes no findings of fact in this opinion and order.

[2] Black Bear's complaint does not allege any claims concerning Z.H.H., J.H.H., C.M., and O.M., the other children named in case A22-260.

custody of Em.A.H.H., Ev.A.H.H., and A.U.H.H. Id. at 13–14. Because there were no immediate safety concerns for G.R.L., L.A.H.H., and L.J.H.H., they were not taken into DSS custody at that time. Id. at 14. However, those three children were removed from Black Bear's custody at a later time.[3]

On July 18, 2023, Black Bear filed a federal complaint against Judge Linngren and several South Dakota Department of Social Services (DSS) employees, seeking to regain custody of Em.A.H.H., Ev.A.H.H., and A.U.H.H and alleging violations ICWA and her constitutional rights. Black Bear v. Lingren, 2024 WL 1299079. Due to the federal lawsuit, Judge Linngren recused herself from the state abuse and neglect case, and Judge Wickre was assigned to the case. This Court ultimately dismissed as moot Black Bear's federal complaint surrounding custody of Em.A.H.H., Ev.A.H.H., and A.U.H.H. because she regained custody of those children and case A22-357 was closed by Judge Wickre. See Black Bear v. Lingren, 5:23-CV-05049-RAL, 2025 WL 588187 (D.S.D. Feb. 24, 2025) (dismissing federal complaint); Doc. 10 at 1–2 (state-court dismissal of A22-357).

In this case, concerning A22-260 and G.R.L, L.A.H.H., and L.J.H.H., Black Bear alleges that her "voice [has been] shut down" throughout . Doc. 1-1 at 15; Doc. 8 at 5. Black Bear wrote to Judge Wickre submitting evidence, but at the request of one of the attorneys representing her grandchildren, Judge Wickre ordered that Black Bear can only file through her attorney. Doc. 1-1 at 15; Doc. 8 at 5. Black Bear also asserts she has been denied transcripts from her court hearings. Doc. 1-1 at 15; Doc. 8 at 5.

---

[3] Black Bear raises concern with the conditions that her grandchildren have been placed in after removal from her custody. Doc. 1-1 at 14–16, 19; Doc. 8 at 4–5, 15–16.

On November 29, 2023, Diane Garreau, a representative from the Cheyenne River Sioux Tribe, attempted to have case A22-260 transferred to the Cheyenne River Sioux Tribal Court. Doc. 1-1 at 11. Garreau allegedly called the attorney for the State, Roxie Erickson, and informed her that the children were eligible for enrollment in the Cheyenne River Sioux Tribe. Doc. 1 at 3; see also Doc. 1-1 at 11. A representative from the Oglala Sioux Tribe told Black Bear the case would be transferred under ICWA. Doc. 1-1 at 14; Doc. 8 at 4. Black Bear asserts Erickson objected to the transfers because the Oglala Sioux Tribe and the Cheyenne River Sioux Tribe "have no placement for children." Doc. 1-1 at 14; Doc. 8 at 4. Black Bear also submitted to DSS her enrollment papers showing that she is an enrolled member of the Cheyenne River Sioux Tribe. Doc. 1 at 3; Doc. 1-1 at 14; Doc. 8 at 4. Because the case was not transferred to tribal court, a termination of parental rights hearing occurred on December 19, 2023. Doc. 1-1 at 14; Doc. 8 at 4.

In April 2024, Judge Wickre terminated Black Bear's rights as an Indian custodian to her grandchildren L.J.H.H., L.A.H.H., and G.R.L. Doc. 1 at 1–2; Doc. 8 at 3. The termination allegedly occurred because Judge Wickre could not find a record of a drug and alcohol evaluation in Black Bear's file, but Black Bear had an evaluation in December 2022.[4] Doc. 1 at 1–2; Doc. 8 at 3. Black Bear alleges she provided copies of her evaluations to Jennifer Odegard and Shawndai Standing Cloud, both employees of the DSS, but that they omitted evidence from her file. Doc. 1 at 1–3; Doc. 8 at 3. Black Bear requested that the case be transferred to tribal court, but Judge Wickre refused because the request was not timely and there was not a representative from the

---

[4] On February 10, 2023, Black Bear's attorney, Ilisja Duffy, had given Judge Linngren a copy of Black Bear's drug and alcohol evaluation. Doc. 1 at 3; Doc. 8 at 3; see also Doc. 1-1 at 12 (ordering in case A22-260 random urinalysis and preliminary breath tests at DSS's request in August 2022); Doc. 8 at 6 (same); Doc. 1-1 at 13 (describing Black Bears addiction treatment assessment and not recommending Black Bear for treatment but recommending follow-through with DSS's recommendations); Doc. 8 at 12 (same).

Cheyenne River Tribe present at the hearing. Doc. 8 at 3. Black Bear claims the representative attempted to call the state court but was unable to connect. Id. Black Bear asserts Judge Wickre accepted the transfer for G.R.L.'s case because she was an enrolled member but denied transfer for L.J.H.H. and L.A.H.H.'s case. Doc. 1 at 3. She claims DSS employees Odegard and Standing Cloud omitted evidence in her case that could have supported her during the child custody hearing and that Judge Wickre did not comply with her oath to provide a fair hearing. Id. at 3–4.

Black Bear on August 16, 2024, filed this case, concerning case A22-260 and custody of L.J.H.H., L.A.H.H., and G.R.L. After reviewing Black Bear's filings, it remains unclear whether case A22-260 was ongoing at the time she filed this action or whether it remains open today. A supplement attached to her complaint states, "Now our [Termination of Parental Rights proceeding] is happening December 19 -23 . . . ." Doc. 1-1 at 14 (filed August 16, 2024). This Court cannot tell whether the termination hearing occurred December 19, 2023, or December 19 through December 23, 2024. In another filing Black Bear states, "April 12-2024, I Sonji BlackBear had a hearing terminating my Indian custodian rights to my grandchildren, children I had raised since their birth." Doc. 8 at 3.. However, Black Bear has not filed an order showing case A22-260 was terminated. Instead, she filed an order dismissing custody and closing the file in case A22-357, which involved different children than L.J.H.H., L.A.H.H., and G.R.L. Doc. 10 at 1–2 (granting custody of the minor children to Black Bear on January 2, 2025).

Black Bear does not specify if she is suing Defendants in their individual or official capacities. Docs. 1, 8. She alleges claims against Defendants arising under the Fourth, Fifth, and Fourteenth Amendments and various federal statutes: 42 U.S.C. §§ 1983, 1985 (deprivation of civil rights and conspiracy to interfere with civil rights); 42 U.S.C. § 12203 (ADA Retaliation); 18 U.S.C. §§ 1201, 241, 242, 1621, 1001, 2071, 1512 (various criminal statutes prohibiting

kidnapping, conspiracy to deprive civil rights, perjury, concealing court documents, and witness tampering); and 25 U.S.C. §§ 1920-1923 (ICWA). Doc. 1 at 1; Doc. 1-1 at 16; Doc. 8 at 1–2, 15. Additionally, Black Bear requests declaratory relief, compensatory damages, and punitive damages. Doc. 1 at 3; Doc. 8 at 2. She seeks $60,000,000 in money damages because she was terminated as the Indian custodian for children she had raised from birth. Doc. 1 at 4.

## B.    Legal Standard

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." 550 U.S. at 555 (internal citation omitted); see also Abdullah v.

Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)).  Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B).  Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016).  The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Black Bear does not specify if she sues Defendants in their individual or official capacities or both.  Doc. 1.  When a plaintiff does not specifically state in which capacity he or she sues the defendants, the Court must apply the course of proceedings test.  S.A.A. v. Geisler, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc).  "[T]he fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.'"  Id. (quoting Daskalea v. D.C., 227 F.3d 433, 448 (D.C. Cir. 2000)).  "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly."  Id. (quoting Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995).  "Relevant factors include, but are not limited to, how early in the litigation the plaintiff

first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." Id. The United States Court of Appeals for the Eighth Circuit noted that "[o]ur sister circuits can offer helpful guidance." Id. Other circuits have considered factors such as the nature of the plaintiff's claims and whether the complaint alleges that defendant acted in accordance with a government policy or custom. Goodwin v. Summit Cnty., 703 F. App'x 379, 382 (6th Cir. 2017); Briggs, 66 F.3d at 61. "[N]o single factor is dispositive in an assessment of the course of proceedings." S.A.A., 127 F.4th at 1140 (quoting Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004)).

Here, the relief that Black Bear seeks suggests that she intends to sue Defendants in their individual and official capacities. Black Bear seeks declaratory relief as well as compensatory and punitive damages. Doc. 1 at 3; Doc. 8 at 2. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." Brown v Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citation omitted); see also Abdulrazzak v. Smith, 4:17-CV-04058-KES, 2018 WL 4625409, at *16 (D.S.D. Sept. 26, 2018) ("Declaratory and prospective injunctive relief are available as remedies against a state officer in his or her official capacity.").

The nature of Black Bear's claims also suggests that she alleges both individual and official capacity claims. Black Bear alleges claims under Indian Child Welfare Act, which does not allow money damages and only permits declaratory relief, suggesting that Black Bear intended to allege official capacity claims. Fletcher v. Florida, 858 F. Supp. 169, 173 (M.D. Fla. 1994). Yet Black Bear does not allege that Defendants acted in accordance with a government policy or custom, suggesting that she intended to sue Defendants in their individual capacities. Thus, this Court

deems Black Bear's complaint to allege claims against Defendants in their individual and official capacities.

### C.    Black Bear's Causes of Action

#### 1.    ICWA Claims

##### a.    Claims for Money Damages

Black Bear requests money damages. Doc. 1 at 3; Doc. 8 at 2. "The ICWA does not provide for a cause of action for money damages. The only relief that can be provided is declaratory relief under the Act." Fletcher, 858 F. Supp. at 173; see also McClure v. Dohmen, 2009 WL 801586, at *2 (D. Neb. Mar. 24, 2009) ("Plaintiff seeks damages, but such relief is not available under the Indian Child Welfare Act."); Jackson v. Hennepin Cnty. Dep't of Hum. Res. & Pub. Health, 2023 WL 3019013, at *1 n.6 (N.D. Ga. Jan. 19, 2023) ("ICWA does not create a private right of action for money damages."). Thus, Black Bear's ICWA claims for money damages are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

##### b.    Claims for Declaratory Relief

ICWA permits an Indian custodian[5] who loses custody of an Indian child through termination of parental rights under state law to "petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914. Some courts have held this language grants federal courts the authority to invalidate a state-court order for foster care placement or termination of

---

[5] "Indian child" and "Indian custodian" are terms in 25 U.S.C. § 1914 itself. While "American Indian," "Native American," or "tribal member" probably are more apt terms in today's parlance, federal law commonly and historically refers to those descended from or affiliated with the 574 federally recognized American Indian tribes as "Indians."

parental rights if it is in violation of §§ 1911, 1912 or 1913. E.g., Doe v. Mann, 415 F.3d 1038, 1044–48 (9th Cir. 2005). Even if this Court has jurisdiction to invalidate the state-court orders pursuant to §1914, federal courts are generally to abstain from interfering with ongoing state-court proceedings under Younger v. Harris, 401 U.S. 37 (1971). In Oglala Sioux Tribe v. Fleming, 904 F.3d 603 (8th Cir. 2018), the Eighth Circuit held South Dakota's custody proceedings are civil enforcement proceedings to which Younger abstention applies. Id. at 610. From the face of Black Bear's complaint, this Court is unable to ascertain, among other things, whether the state-court proceedings are ongoing in case A22-260. Doc. 1. Thus, at this screening stage, this Court cannot determine if it should abstain under Younger and its progeny.

Section 1911 affords the Indian custodian the right to petition a state court, in the absence of good cause to the contrary, to transfer a foster care or termination of parental rights proceeding to the jurisdiction of the tribe under certain circumstances. 25 U.S.C. § 1911. Black Bear's complaint alleges Judge Wickre violated this section by failing to transfer the case upon Black Bear's petition for L.J.H.H. and L.A.H.H. because Judge Wickre erroneously found L.J.H.H. and L.A.H.H. were not tribal members. Doc. 1 at 3. These allegations are sufficient to state a plausible claim for relief under §§ 1911 and 1914 of ICWA. Accordingly, her claim alleging Judge Wickre's failure to transfer the proceeding survives initial screening, though Younger abstention may ultimately apply.

Section 1912(e) and (f) concern foster care placement orders and parental rights termination orders. 25 U.S.C. § 1912(e), (f). Under each subsection, those orders require a determination that the continued custody of the child by the Indian custodian is "likely to result in serious emotional or physical damage to the child." Id. Black Bear alleges that Judge Wickre failed to consider Black Bear's drug and alcohol evaluations, mental health evaluations, and

10

trauma informed parenting trainings. Doc. 1 at 1; Doc. 1-1 at 1–4, 14. Under ICWA, a foster care placement order must be "supported by clear and convincing evidence" and a parental rights termination order must be "supported by evidence beyond a reasonable doubt." 25 U.S.C. § 1912(e), (f). Judge Wickre's alleged failure to consider Black Bear's evaluations and trainings may have affected the determination that Black Bear's continued custody of L.J.H.H., L.A.H.H., and G.R.L. was likely to result in serious emotional or physical damage to each child. Thus, Black Bear's claims alleging Judge Wickre's foster care placement and parental rights termination orders violate ICWA survive initial screening, though Younger abstention may ultimately apply.

Section 1913 concerns voluntary termination of parental rights, and Black Bear has not alleged any facts related to this section. In her complaint, Black Bear references 25 U.S.C. §§ 1920–1923. Doc. 1-1 at 16. Those sections do not create a private right of action for her to sue DSS employees or a state-court judge under ICWA. Accordingly, her only surviving ICWA claims are for declaratory relief under 25 U.S.C. §§ 1911, 1912(e), 1912(f), and 1914.

### 2.   Section 1983 Claims

Black Bear alleges the "Defendants initiated a [Child Protection Services] case against the Plaintiff, alleging abuse and neglect of the children." Doc. 8 at 1. She asserts that the Defendant's "actions were taken without proper cause and were in violation of [her] Constitutional Rights including the right to due process, the right to be free from unreasonable searches and seizures and the right to privacy." Id. Black Bear "seeks relief under 42 U.S.C. 1983 for violation of these rights." Id.

Persons acting under color of state law who deprive a person of a constitutional right may be liable to the injured person. 42 U.S.C. § 1983. Such rights include procedural and substantive due process rights under the Fourteenth Amendment and the right to be free from illegal searches

11

and seizures under the Fourth Amendment. See Zinermon v. Burch, 494 U.S. 113, 125–26 (1990) (discussing § 1983's applicability to rights incorporated in the due process clause, substantive due process rights, and procedural due process rights). Black Bear names DSS, Judge Wickre, Odegard, and Standing Cloud as defendants and does not specify which defendants deprived her of which rights. Doc. 1. As previously discussed, she sues the individual defendants in both their official and personal capacities. This Court addresses all claims against each named defendant in turn.

### a. Claims Against DSS

Black Bear alleges DSS initiated a Child Protection Services case against her and unlawfully removed the children from her care in violation of her "right to due process, the right to be free from unreasonable searches and seizures and the right to privacy." Doc. 8 at 1. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citing Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)).

According to South Dakota statute, DSS was created by the state legislature. See SDCL § 1-36-1. DSS is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. See Cory, 457 U.S. at 90–91. Black Bear's § 1983 claims against DSS are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

12

### b. Claims Against Judge Wickre

A judge is generally entitled to absolute immunity from suit. <u>Penn v. United States</u>, 335 F.3d 786, 789 (8th Cir. 2003). Judicial immunity, including immunity from suits brought under § 1983 to recover for alleged deprivation of civil rights, applies "in all but two narrow sets of circumstances." <u>Schottel v. Young</u>, 687 F.3d 370, 373 (8th Cir. 2012). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." <u>Mireles v. Waco</u>, 502 U.S. 9, 11–12 (1991) (internal citations omitted). Judicial acts are those normally performed by a judge and if the complainant is dealing with the judge in her judicial capacity. <u>Birch v. Mazander</u>, 678 F.2d 754, 756 (8th Cir. 1982).

Judge Wickre's actions were judicial in nature. Holding hearings in an abuse and neglect action, ruling on a petition to transfer, and issuing orders for foster care placement and termination of parental rights are all acts normally performed by a judge. <u>See also</u> SDCL § 26-7A-1 *et seq.* (describing the judicial procedures for South Dakota's child custody proceedings and the application of ICWA). Judge Wickre is immune from suit when performing these roles, even if, as Black Bear alleges, Judge Wickre erred while acting in her judicial capacity. <u>See</u> <u>Mireles</u>, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice . . . .").

Judicial immunity, however, extends only to individual capacity claims. <u>VanHorn v. Oelschlager</u>, 502 F.3d 775, 777–79 (8th Cir. 2007). Because Black Bear sued Judge Wickre in both her individual and official capacity, this Court must determine whether Black Bear's official capacity claims survive.

"[C]laims against state officials in their official capacities are really suits against the state[,] and a state is not a person for purposes of a claim for money damages under § 1983." <u>Kruger v.</u>

Nebraska, 820 F.3d 295, 301 (8th Cir. 2016). "[E]ven though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." Edelman v. Jordan, 415 U.S. 651, 663 (1974). Eleventh Amendment immunity applies to suits against the judiciary of a state. See Denke v. S.D. Dep't of Soc. Servs., 829 F.2d 688, 689 (8th Cir. 1987) (recognizing the Eleventh Amendment bar suits "against the state or one of its agencies"). South Dakota circuit courts are part of South Dakota's government and immune from suit under the Eleventh Amendment since they are authorized by the South Dakota Constitution and created by the state legislature. S.D. Const. art. II ("The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution."); S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, circuit courts of general jurisdiction and courts of limited original jurisdiction as established by the Legislature."); SDCL § 16-5-1.2 (establishing the seven judicial circuits). Accordingly, Judge Wickre, as a circuit court judge acting in her official capacity, has Eleventh Amendment immunity.

In Ex parte Young, the Supreme Court recognized a narrow exception to sovereign immunity that allows plaintiffs to seek judicial orders in federal court to prevent state officials from enforcing state laws that are contrary to federal law. 209 U.S. 123, 159 (1908). The doctrine of Ex parte Young "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, the state is no longer the real party in interest." Courthouse News Serv. v. Gilmer, 48 F.4th 908, 911 (8th Cir. 2022) (internal quotations omitted). In determining whether the doctrine of Ex parte Young applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."

<u>Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002) (cleaned up and internal quotations omitted).

Here, <u>Ex parte Young</u> is inapplicable because Black Bear's claims against Judge Wickre do not seek prospective relief. Black Bear's Complaint asserts Judge Wickre "terminated [her] Indian Custodian rights" to G.R.L., L.J.H.H., and L.A.H.H and failed to transfer the case and to consider her evaluations and other filings. Doc. 1 at 3. She requests $60 million in damages. <u>Id.</u> Ultimately, Black Bear is asking this Court to void an issued state-court order that she alleges violates her constitutional rights and to compensate her for alleged harm. The relief she requests is retroactive and does not surmount sovereign immunity under the Eleventh Amendment.

Moreover, under these circumstances, Judge Wickre is not a state *executive* official, and the due process claim against her does not fall within the scope of <u>Ex parte Young</u>, 209 U.S. at 163 ("[T]he right to enjoin an individual . . . does not include the power to restrain a court from acting in any case brought before it . . . ."). The exception in <u>Ex parte Young</u> "does not normally permit federal courts to issue injunctions against state-court judges or clerks." <u>Whole Woman's Health v. Jackson</u>, 595 U.S. 30, 39 (2021). Black Bear alleges Judge Wickre failed to consider evidence of her drug and alcohol evaluations and consequently ordered termination of her custodial rights. Doc. 1 at 1. The traditional remedy for an allegedly erroneous state-court ruling is an appeal, "not the entry of an *ex ante* injunction preventing the state court from hearing cases." <u>Id.</u>

For the reasons stated above, Judge Wickre is entitled to absolute immunity from individual capacity claims and entitled to Eleventh Amendment immunity from official capacity claims. Thus, Black Bear's § 1983 claims against Judge Wickre are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii). This determination, however, does not bar the declaratory relief she seeks under ICWA as discussed above.

### c.  Claims Against Standing Cloud and Odegard

Black Bear raises the same due process and Fourth Amendment claims against DSS employees Standing Cloud and Odegard in their individual and official capacities.

### i.  Due Process Claims

Black Bear, as the Indian custodian of her grandchildren, has a "liberty interest in the care, custody, and management" of her grandchildren.  Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 898 (8th Cir. 2020).  The right to family integrity, however, "does not include a constitutional right to be free from child abuse investigations" because the state "has a compelling interest in protecting minor children, especially when it is necessary to protect them from their [custodians]." Id. at 897.  The liberty interest in maintaining the family, like other liberty interests, may be subject to state intervention "under procedures sufficient to meet the requirements of the Due Process Clause."  Id.  The Due Process Clause requires notice and "the opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation marks omitted).  For cases involving the removal of children, "the meaningful time and manner requirement means that the state must hold a hearing promptly after removal." Mitchell, 959 F.3d at 897.

Under South Dakota law, children may be removed from their homes in exigent circumstances.  SDCL § 26-7A-1 et seq.  The procedures in such cases include three phases: the emergency removal phase, id. §§ 26-7A-12 to 19 (requiring hearing within forty-eight hours excluding weekends and court holidays), the adjudication phase, id. §§ 26-7A-34 to 87, and the dispositional phase, id. §§ 26-7A-90 to 104.  South Dakota also has procedures for when child custody proceedings implicate the Indian Child Welfare Act, 25 U.S.C. § 1912.  Id. §§ 26-7A-15 to 15.3.

16

Black Bear does not plead facts alleging she was deprived of notice or an opportunity to be heard. She instead asserts that Odegard and Standing Cloud "omited [sic] evidence from [her] file." Doc. 1 at 3. This statement alone does not support a procedural due process claim. She does not say what evidence was omitted. Black Bear's complaint states that the evidence Judge Wickre failed to consider was in the file. Id. Throughout the proceedings, she was represented by an attorney, "who gave a copy [of the drug and alcohol evaluations] to Judge Linngren" the previous judge assigned to the case. Id. Because Black Bear has not alleged the omission of any procedural safeguards she was due, she has failed to state a claim for violation of her procedural due process rights. See Mitchell, 959 F.3d at 898.

"In addition to its procedural protections, the Due Process Clause protects individual liberties from government action regardless of the fairness of the procedures used to implement them." Id. (internal quotation marks omitted). Black Bear has "an important but limited substantive due process right in the care and custody of [the] children." Abdouch v. Burger, 426 F.3d 982, 987 (8th Cir. 2005). To establish a substantive due process violation, a plaintiff "must demonstrate that a fundamental right was violated and that the conduct shocks the conscience." Akins v. Epperly, 588 F.3d 1178, 1183 (8th Cir. 2009) (footnote omitted). Whether conduct shocks the conscience is a question of law. Id. Negligence does not rise to the level of conscience-shocking conduct, but deliberate indifference or conduct intended to cause injure may be considered conscience-shocking. Id.

Black Bear asserts Standing Cloud and Odegard initiated an abuse and neglect case against her without proper cause. Doc. 8 at 1. She also asserts they omitted evidence from her file. Doc. 1 at 3. By initiating and pursuing the case, Standing Cloud and Odegard have interfered with Black Bear's right in the custody and care of her grandchildren. Investigators shock the conscious

when they "systematically pressure to implicate [an individual] despite contrary evidence." Folkerts v. City of Waverly, Iowa, 707 F.3d 975, 981 (8th Cir. 2013). Thus, deliberately omitting or failing to disclose certain evidence may constitute conscience-shocking behavior. Black Bear, however, has not alleged facts showing either Standing Cloud or Odegard failed to disclose evidence. She does not state in her complaint what evidence Standing Cloud and Odegard omitted from the record. Docs. 1, 8. The evidence she alleges Judge Wickre failed to consider was presented to the court through her attorney. Doc. 1 at 3 (asserting her attorney Ilisja Duffy "gave a copy to Judge Linngren 2-10-23 who stated in court she received my alcohol and drug evaluation."). The fact that Standing Cloud and Odegard initiated and pursued the investigation does not alone show an undue pressure to implicate Black Bear. After all, DSS became involved with cases A22-260 and A22-357 after Em.H.H., Ev.H.H. and A.H.H. reported to Rapid City police different stories of physical and sexual abuse while in Black Bear's custody. Doc. 8 at 13–14.

Because she has not alleged in her complaint conscious-shocking behavior, Black Bear fails to state a substantive due process claim. Accordingly, Black Bear's substantive and procedural due process claims against Standing Cloud and Odegard are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### ii.  Unlawful Search and Seizure Claims

Black Bear alleges that the defendants violated her Fourth Amendment rights by illegally seizing her grandchildren: G.R.L., L.A.H.H., and L.J.H.H. Doc. 8 at 1; see Doc. 1 at 1 (citing Fourth Amendment). She also alleges violation of her right to privacy and right to be free from illegal searches.

For Black Bear to claim a violation of her right to be free from an unreasonable search, she "must demonstrate that [she] personally has a reasonable expectation of privacy in the place searched." United States v. Crumble, 878 F.3d 656, 659 (8th Cir. 2018) (cleaned up and quotations omitted). Black Bear does not allege any facts to establish a reasonable expectation of privacy. She does not state where the search occurred, who executed a search, what was searched, or any other circumstances involving a search. The only filing that might be construed as a search is the Rapid City Police report summarizing their investigation into child abuse, Doc. 8 at 13–14, but this document details the police's execution of a full faith and credit order at Tiara LeClaire's residence to return children to Black Bear's custody. Id. at 13. It does not contain any information establishing that any of the Defendants searched a place where Black Bear may have had a reasonable expectation of privacy. Thus, Black Bear's Fourth Amendment claim for unreasonable search is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

Black Bear's unlawful seizure claim must also be dismissed. The Fourth Amendment protections to prevent an unlawful seizure belong to G.R.L., L.A.H.H., and L.J.H.H. because Fourth Amendment rights are personal rights and may not be vicariously asserted. Alderman v. United States, 394 U.S. 165, 174 (1969). Under 28 U.S.C. § 1654, a pro se plaintiff may file their own cases in federal court, but a pro se plaintiff cannot bring claims on behalf of others. See Johnson v. Precythe, 2019 WL 931925, at *1 (E.D. Mo. Feb. 26, 2019) (collecting cases). Black Bear acting pro se cannot maintain claims for violation of her grandchildren's Fourth Amendment rights. See Crozier for A.C. v. Westside Cmty. Sch. Dist., 973 F.3d 882, 887 (8th Cir. 2020); Marglon v. Child Prot. Servs., 4:18-CV-04156-LLP, 2019 WL 1455410, at *1–2 (D.S.D. Apr. 2, 2019) (holding that upon removal of children from their home and placement in foster care, "[e]ven if [the parent] was asserting his children's Fourth Amendment rights on their behalf, [the parent]

is not an attorney and may not litigate, *pro se*, his children's Fourth Amendment claims for them.") (citing Udoh v. Minn. Dep't of Human Servs., 2017 WL 4005606, at *2 (D. Minn. Sept. 12, 2007)); C.R. v. Mo. Dep't of Soc. Servs., 2021 WL 4303688, at *1 (W.D. Mo. Sept. 21, 2021) ("If parents cannot litigate pro se on behalf of their minor children in § 1983 actions, grandparents certainly lack standing to do the same."). Accordingly, Black Bear's Fourth Amendment claim for unreasonable seizure is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.    Malicious Prosecution

Black Bear's complaint includes malicious prosecution as a claim, which this Court analyzes here under § 1983 and later in this opinion and order as a state-law claim. Doc. 1 at 1. "[M]alicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury." Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001). As discussed above, Black Bear has failed to state a claim for deprivation of her due process and Fourth Amendment rights. Thus, malicious prosecution is not a cognizable claim, as she has not sufficiently alleged a constitutional injury. Id. Black Bear's malicious prosecution claim against the Defendants is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4.    Civil Conspiracy Claim

Black Bear invokes 42 U.S.C. § 1985 as a ground for relief. Doc. 1 at 1. "In order to state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" Kelly v. City of Omaha, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (quoting City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989)). This standard requires that "allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." Id. at 1078.

Black Bear has not alleged sufficient facts to show that defendants reached an agreement or formed a civil conspiracy with the purpose of depriving her of her constitutional rights. The only factual allegation related to this claim is that Odegard and Standing Cloud omitted evidence from her file, which led to the adverse ruling from Judge Wickre. Doc. 1 at 3. She does not allege any facts showing that the alleged misconduct arose from an agreement or from any such "meeting of the minds directed toward an unconstitutional act." Kelly, 813 F.3d at 1078. Thus, Black Bear's § 1985 claims against the Defendants are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5.   Retaliation Claim Under 42 U.S.C. § 12203

Black Bear's complaint cites 42 U.S.C. § 12203 as a basis for relief. Doc. 1 at 1. This portion of United States Code is the Americans with Disabilities Act ("ADA"), and the section she cites prohibits, among other things, retaliation against employees for participating in an ADA investigation, proceeding, or other statutorily protected activity. 42 U.S.C. § 12203. Black Bear has not alleged any direct evidence of retaliation, intimidation, coercion or other prohibited employer act. She has not alleged she engaged in an activity protected under the statute, nor has she alleged an adverse employment action. Doc. 1. See Anderson v. KAR Glob., 78 F.4th 1031, 1036 (8th Cir. 2023) (discussing elements required to establish a prima facie case under 42 U.S.C. § 12203 in the absence of direct evidence). Accordingly, she has failed to state a claim under 42 U.S.C. § 12203 and her claim is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6.   Claims Under Title 18

Black Bear alleges claims arising under 18 U.S.C. §§ 1201, 241, 242, 1621, 1001, 2071, and 1512, which are criminal statutes prohibiting kidnapping, conspiracy to deprive civil rights, perjury, concealing court documents, and witness tampering. Doc. 1 at 1. These statutes are part

of Title 18, which is the federal criminal code. Title 18 generally does not create civil liability or a private right of action. See also Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.").

Congress did not create a private right of action for Black Bear to bring civil claims against the Defendants through any of the criminal statutes Black Bear invokes. See, e.g., Milam v. Southaven Police Dep't, No. 15-CV-02029-SHL-DKV, 2015 WL 1637937, at *7 (W.D. Tenn. Apr. 13, 2015) ("To the extent [the plaintiff] is asserting a cause of action arising under the federal criminal kidnapping statute, there is no private right of action."). Black Bear's claims arising from Title 18 are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 7.   State-Law Claims

Black Bear's complaint also alleges negligence, intentional infliction of emotional distress and malicious prosecution, all of which are state-law claims. Doc. 1 at 1; Doc. 8 at 1. If a court has original jurisdiction in a civil action, that court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see also McLaurin v. Prater, 30 F.3d 982, 984–85 (8th Cir. 1994).

Under South Dakota law, state officers, employees, and agents who act within the scope of their employment or agency are "immune from suit or liability for damages brought against [them] in either [their] individual or official capacity." SDCL § 21-23-17; see also SDCL 26-8A-14 (providing immunity for persons participating in good faith for participation in any judicial proceeding resulting from a report of abuse or neglect). Likewise, public entities are immune from liability for damages when involved in governmental functions. SDCL § 21-32A-3. Under 28

U.S.C.A. § 1915(e)(2)(B)(iii), the court shall dismiss the case if it determines that the action seeks monetary relief against a defendant who is immune from such relief. Black Bear's state claims seek monetary damages against Judge Wickre based upon Judge Wickre's failure to consider Black Bear's drug and alcohol evaluations and failure to consider tribal enrollment documentation for L.J.H.H. and L.A.H.H. As previously noted, Judge Wickre was acting in her judicial capacity and with jurisdiction throughout the abuse and neglect hearings. Accordingly, Judge Wickre is entitled to judicial immunity, see Mireles, 502 U.S. at 11–12, and immunity under SDCL § 21-23-17. Black Bear's state-law claims against her are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii).

Black Bear alleges that DSS, Odegard, and Standing Cloud were all provided the evaluations and enrollment documentation and that they omitted the materials from court proceedings. She invokes negligence, intentional infliction of emotional distress, and malicious prosecution as causes of action under South Dakota law. This Court does not address whether these Defendants are entitled to immunity because Black Bear has failed to allege facts that would sustain claims for negligence, intentional emotional distress, or malicious prosecution under South Dakota law.

In South Dakota, "[e]very person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill." SDCL § 20-9-1. "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Johnson v. Hayman & Assocs., Inc., 867 N.W.2d 698, 702 (S.D. 2015). Parties in an abuse and neglect action must comply with discovery provisions of SDCL §§ 26-7A-58 to 26-7A-71, and the state court may order the party to permit discovery or inspection of evidence. SDCL 26-7A-73. Assuming this requirement

23

establishes a duty under South Dakota law, Black Bear has not shown a breach of the duty. The drug and alcohol evaluation and enrollment records would be equally available to Black Bear to submit at the hearings. She states that she gave her evaluations to Odegard, Standing Cloud, and her own attorney. Black Bear, through her attorney, was able to present the records before the court. In fact, she alleges that the evidence was before the court and that Judge Linngren failed to properly consider the evaluations and that Judge Wickre "missed it." Doc. 1 at 3. Thus, even if DSS, Odegard, and Standing Cloud owed Black Bear a duty to disclose materials, Black Bear has not alleged facts showing the Defendants breached the duty. Black Bear's claims for negligence against the DSS Odegard, and Standing Cloud are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

> Under South Dakota law, the elements of intentional infliction of emotional distress are:
>
> (1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause-in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

Est. of Johnson by & through Johnson v. Weber, 898 N.W.2d 718, 726 (S.D. 2017). Black Bear must "exceed a rigorous benchmark" under this tort claim. Id. "For conduct to be outrageous, it must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (cleaned up and internal quotations omitted). Id. Whether conduct is extreme and outrageous is a question of law. Id. at 726, 729. Black Bear's allegations do not meet this strenuous standard. Her allegation that DSS, Odegard, and Standing Cloud omitted evidence from her file do not reflect an attempt by Defendants to deceive or act recklessly. Id. at 729. This is especially true given that Black Bear's complaint asserts she was represented by counsel during the proceeding and that her counsel

provided the records. Doc. 1 at 3. Black Bear's claims for intentional infliction of emotional

distress are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

Black Bear's final state-law claim is for malicious prosecution. The elements for malicious

prosecution are:

> (1) The commencement or continuance of an original criminal or civil judicial
> proceeding; (2) its legal causation by the present defendant against plaintiff, who
> was defendant in the original proceeding; (3) its bona fide termination in favor of
> the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the
> presence of malice therein; (6) damage conforming to legal standards resulting to
> plaintiff.

Harvey v. Reg'l Health Network, Inc., 906 N.W.2d 382, 395 (S.D. 2018). Black Bear's complaint

has not alleged the bona fide termination of case A22-260 in her favor. She has filed in this case

an order from Judge Wickre dismissing case A22-357 and returning custody of the children in that

case to Black Bear. Doc. 10 at 1–2. However, Black Bear's complaint in this case concerns case

A22-260 and custody of L.J.H.H., L.A.H.H., and G.R.L., none of whom were the subject of

proceedings in case A22-357. Because Black Bear has not alleged facts that would prove the

second element of malicious prosecution under South Dakota law, her claim must be dismissed

without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

## III.    Motion to Appoint Counsel

Black Bear filed a motion to appoint counsel. Doc. 5. "A pro se litigant has no statutory

or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d

538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court

considers the complexity of the case, the ability of the litigant to investigate the facts, the existence

of conflicting testimony, and the litigant's ability to present her claims. Id. At this time, Black

Bear's claims do not appear to be complex, and she is able to investigate the facts and present her

claims adequately. This Court believes that Black Bear is capable of pursuing her claims pro se at this phase of litigation, and her motion for appointment of counsel, Doc. 4, is denied at this time.

## IV.    Conclusion

Accordingly, it is

ORDERED that Black Bear's motion for leave to proceed in forma pauperis, Doc. 4, is granted. It is further

ORDERED that Black Bear's ICWA claims against Defendants for declaratory relief under 25 U.S.C. §§ 1911, 1912(e), 1912(f), and 1914 survive screening. It is further

ORDERED that Black Bear's § 1983 claims against DSS are dismissed with prejudice and against Judge Wickre are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii). It is further

ORDERED that Black Bear's § 1983 claims against Odegard and Standing Cloud are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Black Bear's civil conspiracy claims against Defendants are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Black Bear's retaliation claims under 42 U.S.C. § 12203 are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Black Bear's claims against Defendants under Title 18 are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Black Bear's state-law claims for negligence, intentional infliction of emotional distress, and malicious prosecution against Defendants are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii). It is further

ORDERED that Black Bear's motion to appoint counsel, Doc. 5 is denied. It is further

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Forms (Form USM-285) to Black Bear to complete the form to cause the complaint to be served upon Defendants Judge Wickre, DSS, Odegard, and Standing Cloud. It is further

ORDERED that Black Bear shall complete and send the Clerk of Court a separate summons and USM-285 form for each Defendant within thirty days from the date of this Court's screening order. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summons and USM-285 forms are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses together with a copy of the complaint, Doc. 1; Black Bear's supplements containing additional allegations, Docs. 1-1, 8, and 10; and this order upon the Defendants. It is further

ORDERED that the Defendants will serve and file an answer or responsive pleading to the amended complaints and supplements on or before 21 days following the date of service or 60 days if the Defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Black Bear will keep the court informed of her current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Civil Local Rules while this case is pending.

DATED March 20ᵗʰ, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE