UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SONJI BLACK BEAR,<br><br>Plaintiff,<br><br>vs.<br><br>STACY WICKRE; JENNIFER ODEGARD; SD DEPARTMENT OF SOCIAL SERVICES; and SHAWNDAI STANDING CLOUD,<br><br>Defendants. | 5:24-CV-05065-RAL<br><br>OPINION AND ORDER ON PENDING MOTIONS |

Plaintiff Sonji Black Bear filed this pro se lawsuit under 42 U.S.C. §§ 1983 and 1985 as well as under the Indian Child Welfare Act (ICWA) making claims related to her loss of custody over certain grandchildren. Doc. 1. This Court screened the Complaint under 28 U.S.C. § 1915 and dismissed all claims except for Black Bear's ICWA claims against Defendants for declaratory relief under 25 U.S.C. §§ 1911, 1912(e), 1912(f), and 1914. Doc. 11. Defendants separately answered and filed motions to dismiss. Docs. 17, 19, 26, 38. Black Bear filed a Motion for Declaratory Judgment and subsequently filed a Motion for Summary Judgment. Docs. 31, 48. This Court gave notice of an intent to take judicial notice of the state-court record in In re Z.H.H., J.H.H., L.H.H., and L.H.H., File No. 51JUV22-260, Pennington County, Seventh Judicial Circuit, South Dakota (the State Court Litigation), where Black Bear is litigating her rights relating to certain grandchildren. Doc. 58. This Court allowed an opportunity for the parties to object to this Court taking judicial notice of the State Court Litigation filings, and no party filed an objection. Id. For the reasons explained below, this Court takes judicial notice of the State Court Litigation

and grants Defendants' motions to dismiss, Docs. 26, 38, and denies Black Bear's motions, Docs. 31, 48.

I. **Facts and Procedural History[1]**

Black Bear alleges that Defendants violated her right to custody of her grandchildren, G.R.L., L.J.H.H., and L.A.H.H. Doc. 1 at 1. Black Bear's status as Indian custodian[2] of the children was terminated in the State Court Litigation, which is an abuse and neglect action involving the care and custody of G.R.L., L.J.H.H., L.A.H.H., and four other children.[3] Id. at 1, 3; Doc. 1-1 at 11; Doc. 8 at 1, 3, 6. The State Court Litigation appears to have coincided with a second abuse and neglect action, bearing case number A22-357, involving custody of Em.A.H.H., Ev.A.H.H., and A.U.H.H. Doc. 10 at 1; see Black Bear v. Lingren,[4] 5:23-CV-05049-RAL, 2024 WL 1299079, at *1 (D.S.D. Mar. 27, 2024) (screening Black Bear's federal complaint surrounding case A22-357).

Both cases stem from events beginning in June 2022 when Pennington County deputy sheriffs executed a full faith and credit order to remove Em.A.H.H., Ev.A.H.H., and A.U.H.H. from the custody of Tiara LeClaire and to place the children with Black Bear. Doc. 8 at 13. The

---

1 This Court makes no finding of fact but derives the facts from Black Bear's Complaint and supporting record materials.

2 "Indian child" and "Indian custodian" are terms in 25 U.S.C. § 1914 itself. While "American Indian," "Native American," or "tribal member" probably are more apt terms in today's parlance, federal law commonly and historically refers to those descended from or affiliated with the 574 federally recognized American Indian tribes as "Indians."

3 Black Bear's complaint does not allege any claims concerning Z.H.H., J.H.H., C.M., or O.M., the other children originally named in the State Court Litigation.

4 Black Bear listed as a defendant Heidi Lingren, a judge of the Seventh Judicial Circuit of South Dakota, in that case. The defendant's actual last name is Linngren. This Court will refer to Judge Linngren by the correct spelling of her last name in this opinion.

children reported to the deputy sheriffs that Black Bear had abused them. Id. Em.A.H.H. reported that Black Bear mocked and punched them, and A.U.H.H. reported that Black Bear hit her with a spoon on her arms and legs. Id. Em.A.H.H., Ev.A.H.H., and A.U.H.H. reported that they were uncomfortable with some of the men whom Black Bear has around her home. Id. The South Dakota Department of Social Services (DSS) then took custody of Em.A.H.H., Ev.A.H.H., and A.U.H.H. Id. at 13–14. Because there were no immediate safety concerns for G.R.L., L.A.H.H., and L.J.H.H., they were not taken into DSS custody at that time. Id. at 14. However, those three children were removed from Black Bear's custody at a later date.[5]

On July 18, 2023, Black Bear filed a federal complaint against Judge Heidi Linngren and several DSS employees, seeking to regain custody of Em.A.H.H., Ev.A.H.H., and A.U.H.H and alleging violations of ICWA and her constitutional rights. Black Bear v. Lingren, 2024 WL 1299079. Due to the federal lawsuit, Judge Linngren recused herself from the State Court Litigation, and Judge Stacy Wickre was assigned to the case. This Court ultimately dismissed as moot Black Bear's federal complaint surrounding custody of Em.A.H.H., Ev.A.H.H., and A.U.H.H. because she regained custody of those children and case A22-357 was closed by Judge Wickre. See Black Bear v. Lingren, 5:23-CV-05049-RAL, 2025 WL 588187 (D.S.D. Feb. 24, 2025) (dismissing federal complaint); Doc. 10 at 1–2 (state-court dismissal of A22-357).

In this case, concerning the State Court Litigation and G.R.L, L.A.H.H., and L.J.H.H., Black Bear alleges that her "voice [has been] shut down" throughout. Doc. 1-1 at 15; Doc. 8 at 5. Black Bear wrote to Judge Wickre submitting evidence, but at the request of one of the attorneys representing her grandchildren, Judge Wickre ordered that Black Bear can only file through her

---

[5] Black Bear raises concern with the conditions that her grandchildren have been placed in after removal from her custody. Doc. 1-1 at 14–16, 19; Doc. 8 at 4–5, 15–16.

3

attorney. Doc. 1-1 at 15; Doc. 8 at 5. Black Bear also asserts she has been denied transcripts from her court hearings. Doc. 1-1 at 15; Doc. 8 at 5.

On November 29, 2023, Diane Garreau, a representative from the Cheyenne River Sioux Tribe, filed a motion to transfer the State Court Litigation to the Cheyenne River Sioux Tribal Court. Doc. 1-1 at 11. Garreau called the attorney for the State, Roxie Erickson, and informed her that the children were eligible for enrollment in the Cheyenne River Sioux Tribe. Doc. 1 at 3; see also Doc. 1-1 at 11. A representative from the Oglala Sioux Tribe told Black Bear the case would be transferred under ICWA. Doc. 1-1 at 14; Doc. 8 at 4. Black Bear asserts Erickson objected to the transfers because the Oglala Sioux Tribe and the Cheyenne River Sioux Tribe "have no placement for children." See Doc. 1-1 at 14; Doc. 8 at 4. Black Bear also submitted to DSS her enrollment papers showing that she is an enrolled member of the Cheyenne River Sioux Tribe. Doc. 1 at 3; Doc. 1-1 at 14; Doc. 8 at 4. After the state court denied the motion to transfer to tribal court, a termination of parental rights hearing occurred on December 19, 2023. Doc. 1-1 at 14; Doc. 8 at 4.

In April 2024, Judge Wickre terminated Black Bear's rights as an Indian custodian of her grandchildren G.R.L., L.J.H.H., and L.A.H.H. Doc. 1 at 1–2; Doc. 8 at 3. The termination allegedly occurred because Judge Wickre could not find a record of a drug and alcohol evaluation in Black Bear's file, but Black Bear had an evaluation in December 2022.[6] Doc. 1 at 1–2; Doc. 8 at 3. Black Bear alleges she provided copies of her evaluations to Jennifer Odegard and Shawndai

---

[6] On February 10, 2023, Black Bear's attorney, Ilisja Duffy, had given Judge Linngren a copy of Black Bear's drug and alcohol evaluation. Doc. 1 at 3; Doc. 8 at 3; see also Doc. 1-1 at 12 (ordering in the State Court Litigation random urinalysis and preliminary breath tests at DSS's request in August 2022); Doc. 8 at 6 (same); Doc. 1-1 at 13 (describing Black Bear's addiction treatment assessment and not recommending Black Bear for treatment but recommending follow-through with DSS's recommendations); Doc. 8 at 12 (same).

Standing Cloud, both employees of DSS, but that they omitted evidence from her file. Doc. 1 at 1–3; Doc. 8 at 3. Black Bear again requested that the State Court Litigation be transferred to tribal court, but Judge Wickre allegedly refused because the request was not timely and there was not a representative from the Cheyenne River Sioux Tribe present at the hearing. Doc. 8 at 3. Black Bear claims the representative attempted to call the state court but was unable to connect. Id. Black Bear asserts Judge Wickre accepted the transfer for G.R.L.'s case because she was an enrolled member but denied transfer for L.J.H.H. and L.A.H.H.'s cases. Doc. 1 at 3. She claims DSS employees Odegard and Standing Cloud omitted evidence in her case that could have supported her during the child custody hearing and that Judge Wickre did not comply with her oath to provide a fair hearing. Id. at 3–4.

On August 16, 2024, Black Bear filed this pro se lawsuit concerning the State Court Litigation and custody of G.R.L., L.J.H.H., and L.A.H.H. On March 20, 2025, this Court screened the Complaint under 28 U.S.C. § 1915 and allowed "Black Bear's ICWA claims against Defendants for declaratory relief under 25 U.S.C. §§ 1911, 1912(e), 1912(f), and 1914 [to] survive screening," Doc. 11 at 26, but indicated that Younger abstention may ultimately apply once this Court was able to ascertain if the State Court Litigation was ongoing, id. at 10–11. Defendants now move to dismiss for failure to state a claim, for lack of jurisdiction, and under the Younger abstention doctrine. Docs. 27, 39. Judge Wickre also raises judicial and Eleventh Amendment immunity as grounds for her dismissal. Doc. 27. On August 6, 2025, Black Bear filed an Amended Complaint, Doc. 30, without leave from the court or stipulation with Defendants, and a Motion for Declaratory Judgment, Doc. 31. On October 16, 2025, Black Bear moved for summary judgment, and on Defendants' request, this Court granted an extension of time to respond to the summary

5

judgment motion until after this Court's ruling on Defendants' motions to dismiss. Docs. 48, 51, 52.

After reviewing Black Bear's filings and affidavits submitted by Defendants, it remained unclear whether the State Court Litigation is still ongoing and remains open today. Defendants submitted two affidavits[7]: one from Judge Wickre and one from Chelsy Ocker, a Family Services Specialist Supervisor with the Division of Child Protection Services at the DSS. Docs. 28, 29. Ocker's affidavit states that "the abuse and neglect proceedings remain ongoing, and a permanency hearing regarding L.A.H.H. and L.J.H.H. is scheduled for June 12, 2025." Doc. 29 at 2. Ocker also states that G.R.L. was dismissed from the petition because this individual reached the age of majority in 2025. Id. Judge Wickre's affidavit states that "[c]ase A22-260 is still open and ongoing." Doc. 28 at 1. Judge Wickre's affidavit was executed on July 29, 2025, over a month after the permanency hearing was scheduled to occur. Id. at 2; Doc. 29 at 2. Nothing in subsequent filings from any party showed that the State Court Litigation has been closed.

On February 6, 2026, this Court filed an order giving notice of an intent to take judicial notice of state court filings in the State Court Litigation.[8] Doc. 58. This Court gave the parties fourteen days to file an objection to this Court taking judicial notice of the State Court Litigation. Id. at 2. This Court did not receive any objection to taking judicial notice of the State Court Litigation and takes judicial notice under Fed. R. Evid. 201 of those official records.

The State Court Litigation records show that Black Bear and others appealed Judge Wickre's April 2024 order denying transfer of jurisdiction and terminating Black Bear's Indian

---

[7] This Court can "consider[] matters outside of the pleadings" for this Motion to Dismiss because Defendants make a factual attack on this Court's jurisdiction. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

[8] This Court cites to the fifth volume of the State Court Litigation record as "S.R."

custodian rights among other things. S.R. 101–03, 139–41, 196–98. On January 13, 2025, the Supreme Court of South Dakota issued an Order of Remand directing the parties to supplement the record to include Tribal Court Orders. Id. at 1030–31. All appeals concerning the State Court Litigation were stayed until the remand was complete. Id. at 1031. At the trial court level, a Notice of Hearing was filed on December 5, 2025, notifying parties of a permanency hearing to be held in June 2026. Id. at 1598. On December 11, 2025, the trial court issued an order directing the parties to notify the Supreme Court of South Dakota that the purpose of the Order of Remand had been accomplished. Id. at 1593–96. The State Court Litigation remains open and ongoing.

## II. Discussion

The United States Court of Appeals for the Eighth Circuit requires district courts to construe pro se complaints liberally. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Id. at 915. Importantly, however, this rule of liberal construction does not excuse a pro se plaintiff from alleging enough facts to support her claims. Id. at 914. That is, even though a plaintiff is proceeding pro se, the district court will not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Id. at 915.

Portions of Black Bear's Complaint survived initial screening under 28 U.S.C. § 1915A, Doc. 11, but Black Bear's Complaint is still susceptible to a motion to dismiss. East v. Dooley, No. 4:19-CV-04126-RAL, 2020 WL 5593923, at *2 n.3 (D.S.D. Sept. 18, 2020), aff'd, 847 F. App'x 359 (8th Cir. 2021); see also Braun v. Hanson, No. 18-cv-3355, 2020 WL 1496580, at *2 (D. Minn. Jan. 27, 2020) (rejecting the argument that survival of § 1915A's screening requirements

7

bars defendants from moving to dismiss). Indeed, this Court indicated in its § 1915A screening order that "Younger abstention may ultimately apply." Doc. 11 at 10.

At the outset, this Court notes that abstention does not involve subject matter jurisdiction. In an abstention analysis, the issue is not whether a court has jurisdiction, but instead whether it is appropriate for a court to decline jurisdiction.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Allegheny Cnty. v. Frank Mashuda Co., 360 U.S. 185, 188 (1959). "Generally, a federal district court must exercise its jurisdiction over a claim unless there are 'exceptional circumstances' for not doing so." Scottsdale Ins. Co. v. Detco Indus., Inc., 426 F.3d 994, 996 (8th Cir. 2005) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16–19 (1983)); see also Colo. River Water Cons. Dist. v. United States, 424 U.S. 800, 817–18 (1976) (stating that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"). Hence, while a federal court's obligation to hear and decide a case is "virtually unflagging," federal courts apply judicially-created abstention doctrines in specific, limited circumstances. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013). See generally R.R. Comm'n v. Pullman Co., 312 U.S. 496 (1941) (abstention appropriate where a challenged state statute is susceptible of a construction by the state court that would modify or avoid a federal constitutional question ("Pullman abstention")); Colo. River, 424 U.S. at 817–20 (abstention appropriate to avoid duplicative litigation ("Colorado River abstention")); Burford v. Sun Oil Co., 319 U.S. 315 (1943) (abstention appropriate to avoid needless conflict in administration of state affairs ("Burford abstention")); Younger v. Harris, 401 U.S. 37 (1971) (abstention appropriate to avoid intrusion on state enforcement of state laws in state

courts ("Younger abstention")). Relevant here is the Younger form of abstention. See Younger, 401 U.S. 37, 43–45.

The State Court Litigation involves custody of Black Bear's grandchildren G.R.L., L.J.H.H., L.A.H.H., and four other children.[9] Liberally construed, Black Bear's Complaint raises ICWA claims concerning the State Court Litigation, namely that the state-court proceedings denied a request to transfer the case to tribal court under 25 U.S.C. § 1911, terminated her rights as Indian custodian without evidence beyond a reasonable doubt that the continued custody by the "Indian custodian is likely to result in serious emotional or physical damage to the child" under § 1912(f), and ordered a foster care placement not supported by clear and convincing evidence that the continued custody by the "Indian custodian is likely to result in serious emotional or physical damage to the child" under § 1912(e). See Doc. 1. (alleging violations of ICWA). Black Bear's claims that survived screening request declaratory relief that Defendants' "actions were in violation of [her] constitutional rights." Doc. 1 at 3.

ICWA permits an Indian custodian who loses custody of an Indian child through termination of parental rights under state law to "petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914. Some courts have held this language grants federal courts the authority to invalidate a state-court order for foster care placement or termination of parental rights if it is in violation of §§ 1911, 1912 or 1913. E.g., Doe v. Mann, 415 F.3d 1038, 1044–48 (9th Cir. 2005). Section 1911 affords the Indian custodian the right to petition a state

---

[9] Based on current state court filings, it appears that only L.J.H.H., L.A.H.H., and two other children not referenced in Black Bear's Complaint remain as listed parties in the State Court Litigation. S.R. 1603–04. G.R.L. was dismissed from custody upon reaching the age of majority in 2025. Id. at 1036; Doc. 29 at 2.

9

court, in the absence of good cause to the contrary, to transfer a foster care or termination of parental rights proceeding to the jurisdiction of the tribe under certain circumstances. 25 U.S.C. § 1911. Section 1912(e) and (f) concern foster care placement orders and parental rights termination orders. Id. § 1912(e), (f). Under each subsection, those orders require a determination that the continued custody of the child by the Indian custodian is "likely to result in serious emotional or physical damage to the child." Id. A foster care placement order must be "supported by clear and convincing evidence[,]" and a parental rights termination order must be "supported by evidence beyond a reasonable doubt." Id.

Black Bear's Complaint alleges Judge Wickre is violating these sections of ICWA in her rulings to date in the State Court Litigation.[10] Doc. 1. However, federal courts are generally to abstain from interfering with ongoing state-court proceedings under Younger, 401 U.S. 37. Younger abstention initially applied only to criminal proceedings but has since extended to "certain civil enforcement proceedings" and "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc., 571 U.S. at 78 (cleaned up) (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989) ("NOPSI")).

In the Eighth Circuit, application of Younger abstention hinges on a three-part inquiry:

> First, does the underlying state proceeding fall within one of the three "exceptional circumstances" where Younger abstention is appropriate [under NOPSI and Sprint]? Second, if the underlying proceeding fits within a Younger category, does the state proceeding satisfy what are known as the "Middlesex" factors? And third, even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?

---

[10] Judge Wickre recused herself as of July 24, 2025, and is no longer assigned to the State Court Litigation. Doc. 28; S.R. 1104; see also S.R. 1104.

10

Wassef v. Tibben, 68 F.4th 1083, 1087 (8th Cir. 2023) (quoting 375 Slane Chapel Rd., LLC v. Stone Cnty., 53 F.4th 1122, 1127 (8th Cir. 2022)).

Here, the first prong is met. Younger abstention applies to child custody proceedings. Moore v. Sims, 442 U.S. 415, 423–35 (1979). The Eighth Circuit has specifically recognized that "South Dakota's temporary custody proceedings are civil enforcement proceedings to which Younger principles apply." Oglala Sioux Tribe v. Fleming, 904 F.3d 603, 610 (8th Cir. 2018).

This Court next addresses the Middlesex factors. Wassef, 68 F.4th at 1088 (cleaned up and citation omitted). Under Middlesex, the court must ask whether the state proceeding "(1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise constitutional challenges." Id. This action meets all three requirements. First, the child custody proceedings are undoubtedly judicial in nature. See SDCL § 26-7A-1 *et seq.* Second, the proceedings implicate an important state interest, as "[t]he government has a compelling interest in protecting minor children, especially when it is necessary to protect them from their [custodian]." Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 897 (8th Cir. 2020). Third, South Dakota state proceedings regarding child custody and parental rights provide the opportunity to raise constitutional challenges. South Dakota law requires the courts in child custody proceedings to "advise the child and the child's parents, guardian, or custodian involved in any action or proceedings . . . of their constitutional and statutory rights, including the right to be represented by an attorney, at the first appearance of the parties before the court." SDCL § 26-7A-30; see also 25 U.S.C. § 1912(b) ("In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding."). Black Bear has had legal representation in the State Court Litigation. Doc. 28 at 1 ("To the best of my knowledge and based on my own observations,

Sonji A. Black Bear has been represented by legal counsel throughout the life of A22-260 since I was assigned to that case."). Black Bear has the right to file a motion for new hearing at the conclusion of the proceedings, and if that motion is denied, she has the right to appeal. SDCL § 26-7A-30. Indeed, it appears that Black Bear has appealed to the Supreme Court of South Dakota the termination of her Indian custodian rights and refusal to transfer jurisdiction. S.R. 101–03. Black Bear's attack on the state-court's procedures "does not establish the inadequacy of those procedures for Younger abstention purposes." Wassef, 68 F.4th at 1089.

The third part of the Younger abstention analysis asks whether "abstention [is] nevertheless inappropriate because an exception to abstention applies." Id. at 1087 (cleaned up and citation omitted). Abstention may be inappropriate where there is a "showing of bad faith, harassment, or some other extraordinary circumstance." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982). Courts also should not abstain "where a state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" Plouffe v. Ligon, 606 F.3d 890, 893 (8th Cir. 2010) (quoting Trainor v. Hernandez, 431 U.S. 434, 447 (1977)).

Black Bear alleges that "Judge Wickre failed to examine [her] case thoughly [sic]." Doc. 1 at 3. Black Bear asserts that she has been denied transcripts from hearings and that her "voice [has been] shutdown[,]" in that Judge Wickre required Black Bear's attorney to be the one filing motions for her. Doc. 1-1 at 15; Doc. 8 at 5. Black Bear generally claims that Odegaard and Standing Cloud have colluded against her to remove certain documents from her file. See Doc. 1 at 1–3. The Eighth Circuit declined to apply the bad faith exception when similar allegations were made in Tony Alamo Christian Ministries v. Selig. 664 F.3d 1245, 1254 (8th Cir. 2012)

(dismissing as implausible allegations that "Defendants conducted the investigation and seized the children in 'bad faith,' that is, in order to harass and intimidate"). Black Bear's disagreement with the state court does not show that any Defendant has acted in bad faith or for the purpose of harassing her. Black Bear's own filings undermine the plausibility that the Defendants have acted in bad faith because DSS only removed Em.A.H.H., Ev.A.H.H., and A.U.H.H. after they had reported being abused in Black Bear's custody but left other children, including L.J.H.H. and L.A.H.H., in her custody because there was no report of abuse at the time. Doc. 8 at 13–14. Additionally, the State Court Litigation shows that Judge Wickre and other state court judges assigned to the case have been applying ICWA standards to the proceeding. See S.R. at 64–93 (finding the children are Indian Children as defined by ICWA, making finding of facts supported by clear and convincing evidence and beyond a reasonable doubt, and applying ICWA standards). Since there is an ongoing state court proceeding to which Younger abstention applies, this Court finds it appropriate to abstain from interfering with the State Court Litigation.

### III. Conclusion

Black Bear's remedy at this time appears to be in the state court proceeding or appeal thereof. If and when those proceedings conclude, she may have a viable federal claim. Accordingly, it is

ORDERED that Defendants' motions to dismiss, Docs. 26 and 38, are granted and this case is dismissed without prejudice. It is further

ORDERED that Black Bear's Motion for Declaratory Judgment, Doc. 31, is denied as moot. It is further

ORDERED that Black Bear's Motion for Summary Judgment, Doc. 48, is denied as moot. It is finally

ORDERED that Black Bear's Motion to Enforce Court-Ordered Deadline, Doc. 55, is denied as moot.

DATED this 23rd day of February, 2026.

BY THE COURT:

*Roberto A. Lange*
ROBERTO A. LANGE
CHIEF JUDGE

14